## RUTLEDGE *et al. vs.* McFARLAND.

1. In *Gresham vs. Johnson et al.,* 70 *Ga.,* 631, this court held that an exemption made to one as the head of a family, under §2040 of the Code, did not alter, change, or in any manner affect the debtor's title to the property so exempted, but devoted it to a special use, and to that extent imposed a charge or incumbrance upon the estate; and when the family was broken up, either by the death of the dependent members, or by the sons attaining their majority, in case they were otherwise *sui juris,* or the marriage of the daughters or death of the wife, the property thereby became disencumbered and was liable to the debts of the owner of the legal title; that the use was then fully executed, and was at an end. This ruling is now affirmed.

2. Prior to the setting apart of property as an exemption to the debtor, there was nothing to prevent him from alienating or mortgaging it, nor did the exemption prevent the foreclosure of a prior mortgage, but the property set apart could not be seized or sold by the execution issuing from the judgment of foreclosure, so long as the exemption continued. When it terminated, the process could be enforced.

3. The decree claimed to be conclusive and binding between the parties in this case decrees to the members of the debtor's family fifty acres of land, to the extent to which it was set apart to him in his lifetime, and enjoins interference with the possession thereof under and by virtue of any right or title acquired under and by reason of the sheriff's sale under the mortgage *fi. fa.*, as set out in complainant's bill. The mortgage, judgment and execution were decreed to be valid, as likewise was the sale of the remainder of the premises under the same, and the title thereto was con- firmed. It did not, however, touch the question of the party in whom the title to the property vests upon the termination of the use for which it was exempted, nor does it restrain the execution of the process when the encumbrance created by the exemption is removed.

December 15, 1885.

Homestead. Title. Levy and Sale. Mortgage. Debtor and Creditor. *Res Adjudicata.* Before Judge BRANHAM. Walker Superior Court. February Term. 1885.

On January 1, 1881, a mortgage *fi. fa.* in favor of X. G. McFarland against George W. Willis was levied on fifty acres of land in land lot 31 of the ninth district and fourth section of Walker county, and a claim thereto was inter- posed by Mary C. Rutledge *et al.*, children and grand- children of Willis. On the trial, the case was submitted to the presiding judge without a jury. The following facts, in brief, appeared:

In 1866, Willis made a mortgage on lots numbers 30 and 31 to secure certain notes which were in renewal of notes originally given for purchase money of the land. In January, 1869, fifty acres of lot 31 were set apart to Willis, as an exemption, under §2040 of the Code. In February of that year, the mortgagee obtained a judgment of foreclosure, and in June the two entire lots of land were levied on, and in August were sold, the plaintiff becoming the purchaser at sheriff's sale. In 1877, Willis died. At the time the exemption was granted, Willis had a daughter of full age, but unmarried, living with him as a member of his family. In 1878, a bill was filed by the present claimants

against the plaintiff, alleging that Willis was imbecile and incompetent to contract when he gave the mortgage; that he did not understand the nature of the foreclosure proceedings, and did not know when, and for what the land sold; that the plaintiff was his brother-in-law, had influence over him, and took advantage of his condition; that plaintiff bought the land for about one-twentieth of its value; that fifty acres had been set apart as a homestead, and the sale was void. This bill was answered by the present plaintiff, who denied the allegations of fraud, imbecility, etc., and alleged that Willis was not, in fact, the head of a family, and the exemption was void; that if he was entitled to any exemption, it only gave him a life estate or an estate during the existence of his family, which terminated at his death; and that the sheriff's sale carried all but this life estate in the fifty acres. The jury found for the present plaintiff (then defendant), except as to the fifty acres exempted, and a decree was entered as follows:

"Complainants do recover of defendants in relation to the fifty acres of land mentioned in said bill set apart to said George Willis in his lifetime, to this extent, that said defendants be enjoined from interfering with the possession of said fifty acres of land so set apart as an exemption, surveyed and platted under and by virtue of any right or title of sheriff's sale under and by virtue of the mortgage *fi. fa.* as set out in said bill of complainant; and it is further decreed that the said mortgage, judgment and execution mentioned in said bill are valid, and the sale of the residue of the premises mentioned in said bill is regular and valid, and that defendants' title thereto is confirmed."

It was admitted that, when the bill was filed, all of the claimants were of full age and married, except two children of a deceased daughter of Willis, and that they lived with their father in Catoosa county, and constituted no part of the family of George W. Willis. It was admitted that a son-in-law of Willis was in possession of the property levied on, and that it had never been divided among Willis's children. The claimants insisted on three positions·

(1.) That the case was *res adjudicata* by reason of the bill and decree.

(2.) That Willis could not make a valid mortgage on the fifty acres in dispute, except in the manner pointed out by the statute for encumbering homesteads.

(3.) That the title to the property exempted vested in the children of Willis, and could not be levied on under a *fi. fa.* against him.

The presiding judge overruled these positions, and held the property subject.    The claimants excepted.

W. H. PAYNE ; I. E. SHUMATE, for plaintiffs in error.

F. W. COPELAND; HARRISON & PEEPLES, for defendant.

HALL, Justice.

The record raises for adjudication the following questions:

(1.) Whether the land exempted under section 2040 of the Code vests in the children of the debtor the title to the same after his death, and relieves it from the lien created by a mortgage executed before the exemption was allowed.

(2.) Whether the land thus exempted, after the execution of the mortgage, can be said to have a lien created thereon, or to be encumbered or conveyed contrary to the provisions of laws inhibiting the party to whom the exemption is allowed from alienating or encumbering it, unless it be sold by the debtor and his wife, if any, jointly, with the consent of the ordinary, and the proceeds shall go to the use of the debtor's family.

(3.) Whether the plaintiff is concluded by a decree in chancery, made upon a suit between these parties respecting the exemption in question, and the enforcement of the lien created by the mortgage executed by the debter to the plaintiff and on which an execution issuing upon the

foreclosure of the mortgage in the lifetime of the mort-
gagor was levied after his death.

1. The question made by the first assignment of error was
passed upon by us in *Gresham vs. Johnson et al.*, 70 *Ga.*,
631, in which we held that an exemption made to a party,
for the use of himself and a minor son, under section 2040
of the Code of 1873, did not alter or change or in any
manner affect the debtor's title to the property so ex-
empted, but devoted it to a special use, and to that extent
imposed a charge or encumbrance upon the estate, and
when the family was broken up, either by the death of its
dependent members, or by the sons attaining their majority,
in case they are otherwise *sui juris*, or the marriage of the
daughters, or death of the wife, the property became
thereby disencumbered and was liable to the debts of the
owner of the legal title; that the use was then fully exe-
cuted and was at an end.

It is now insisted that in rendering this judgment,
the act of the 18th of March, 1866, was overlooked by
this court and that the act confers upon the family of
the debtor the title to the property exempted, and after
his death it passed to them in fee simple. If this be a
correct construction of that act, then this decision re-
peals it, for the case was as much within its provisions
as that now under consideration. But neither the able
and experienced judge of the superior court (Pottle),
who determined it, nor the learned and accurate counsel,
who argued it both in that court and in this, held that
view of the statute, now insisted on, so far as we know, for
the first time. The Code of 1863, Pt. 2, Tit. 3, Ch. 2,
Art. 4 and Section 3, together with this act, contains the
law regulating the rights of these parties. By its provis-
ions, the property exempted is for the use and benefit of
the debtor's family. After it is set apart, no lien can be
created thereon, except in the manner therein specified; it
is not subject to levy and sale by virtue of any process.
If the husband refuses, the wife or any next friend for her

may apply for the exemption; after it is assigned, an officer knowingly levying on it is declared a trespasser, and made liable to suit, and if from any cause it has not been laid off, a party purchasing it with notice takes it subject to "this incumbrance," *i. e.* the exemption. Fifty acres of land is exempted to "the head of the family," and five acres to each child under sixteen years of age. Section 2021 of this Code declares that "the property exempt under this law shall be for the use of the wife during her life, and at her death shall be equally divided between her children under the age of sixteen years." It will thus be seen that the family have nothing but the use of the property, which is something distinct from the title; the wife has this use for her life, and at her death it passes to her children under sixteen years of age. It is not to be over-looked in determining the question of title to the property included therein, that the exemption is by the Code distinctly designated "an incumbrance." These provisions of the law were modified by the act of March 8th, 1866 (Acts, p. 29), which is entitled "An act to amend part 2d, title 3d, chapter 2d, article 4th, section 3d of the Code of Georgia." Section 1 of the act extends the benefit of this part, title, etc., of the Code to intestate insolvent estates, in all cases wherein there is a widow or child or children of the intestate living. Section 2 so amends section 2021 of the Code as to make it read "for the use of the wife or widow, and at her death or intermarriage to be equally divided between the children of her former marriage then living." It is clear that a man who, as the head of a family, had taken an exemption under this Code, is not within either section of this act. And construing the last section of the act in *pari materia,* with the enactment which it was its purpose to amend, we are satisfied that it made no change as to the persons entitled to participate in the use of the property exempted, except to the extent that the widow, upon her second marriage, ceased to be a member of her former husband's family and to have a right, in that

event, to use the property. It passed to children named in the Code, just as it would have passed had she been dead.

The object of such legislation is to provide for those to whom the parent owed a support, and we held, under a statute enacted for a similar purpose, which gives to the widow an action to recover damages for the homicide of her husband, or where there was no widow but children, then to the children, that it did not include such children as were adults at the death of the parent. *Mott vs. The Central Railroad and Banking Company,* 70 *Ga.,* 680. That statute, in its terms, made no distinction between adult and minor children, but looking to its object, we concluded that we could only carry into effect the intention of the legislature by conferring the right of action on the minor children, and by distributing among them, where there was no widow, the amount of the recovery. We are well satisfied with the conclusion reached both in this and in the other case cited. It follows from these decisions that there was no error in the ruling of the court upon this question.

2. We are unable to agree with the learned counsel for plaintiff in error, that a lien created by a mortgage prior to setting apart as an exemption to the debtor a portion of the property covered by the mortgage is such an incumbrance as he cannot make upon the property, except in accordance with the provision of law and in the manner therein specified. The very terms employed are directly opposed to the idea; there was nothing to prevent him from alienating the property before it was incumbered with the use created by the exemption, and if he could have conveyed it absolutely, why could he not have sold it conditionally? The exemption could not prevent the foreclosure of the mortgage upon the property set apart after the execution of the mortgage for the use of the debtor's family; but that it could not be seized and sold by the execution issuing from the judgment of foreclosure is true. This, however, did not destroy the process; it suspended its operation as to this particular property only so

long as the exemption continued. When it terminated, there was no reason why the creditor should be longer restrained from enforcing it; the impediment to its full execution having been removed, there was nothing to stay its progress.

3. The decree insisted upon as conclusive and binding on the parties to this suit is not before us for review, and whether it is sustained by the law is immaterial, as we are at liberty to determine its effect only in its relation to the questions involved in this litigation; if it adjudicates and finally passes upon them, then it is conclusive on the rights now in controversy. But a careful examination of the record in that case leads to the conclusion that it settles none of the material points made by the issues now determined; it decrees to the complainants, who were members of the family of George Willis in his lifetime, the fifty acres of land to the extent that it was set apart to him as an exemption in his lifetime, and enjoins the defendants "from interfering with the possession of said fifty acres of land so set apart as an exemption," under and by virtue of any right or title acquired by them by reason of the sheriff's sale under the mortgage *fi. fa.*, as set out in complainant's bill, at which he became the purchaser. The mortgage judgment and execution were decreed to be valid, as was likewise the sale of the remainder of the premises under the same, and the defendant's title thereto was confirmed. It will be seen that this decree does not touch the question of the party in whom the title to the property vests upon the termination of the use for which it was exempted, nor does it restrain the execution of the process when the incumbrance created by the exemption is removed. The material points in litigation between these parties were not thereby adjudicated, and so they cannot in any wise be considered *res adjudicata*. The record discloses no error, and leaves us no alternative but to order the judgment affirmed.